MERRILL W. JACKSON *vs.* J. U. OLNEY.
SAME *vs.* SAME.

Hampden.   Sept. 22. — Oct. 24, 1885.   FIELD, C. ALLEN, & GARDNER, JJ., absent.

In an action upon two promissory notes signed by the defendant's husband, who died before the trial, and by the defendant, it appeared that there had been a previous note, given by the defendant's husband for a debt to the plaintiff, in an amount equal to the aggregate of the two notes in suit; that this note had been indorsed by the plaintiff, and had been discounted at a bank of which one W. was cashier; that, just before it became due, the defendant's husband sent for W., who agreed to renew the note, if the plaintiff would indorse it; and that, according to the defendant's testimony, the plaintiff came to see her husband, and agreed to take care of the note, saying that he would have it put into two notes, and adding: "Don't worry about these at all. I will take care of them. All we want of you is to get well." The defendant further testified, that nothing was said to her about signing any note; that she had no

property at the time, but had a policy of insurance, which would be available only at her husband's death. The defendant's daughter testified that she went to the bank to get a power of attorney to her for her father to sign; that she obtained this from the attorney of the bank; that W. gave her the two notes in suit, pointing out how they were to be signed, and saying, "Take them home to your father, and tell your father to sign there and your mother there;" and that she knew that the two notes were to take up the former note, because she was told so by her mother. The defendant and her daughter testified, against the plaintiff's exception, to the conversation which took place at the time of signing the notes, in substance, to the effect that the daughter repeated what W. had said; that the defendant's husband said, "I do not see why your mother's name should be on there;" that he sank back, and said, "I guess it is all right;" and that the power of attorney was signed by the husband, after which the daughter signed his name as it appeared on the notes, which the defendant then signed. The defendant further testified, that she had never been spoken to about signing the notes; that she did not think of binding herself on the notes; that she signed them at once after her daughter signed them; that her daughter went right back with the notes; and that her husband was very sick, and she thought the plaintiff was very kind not to worry her husband about the note. *Held,* that there was no evidence that the defendant was induced to sign the notes by fraud on the part of the plaintiff. *Held, also,* that evidence of the conversation which took place at the time of signing the notes was admissible, so far as it formed a part of the act done by the defendant.

TWO ACTIONS OF CONTRACT, upon two promissory notes, both dated August 2, 1883, for $750 each, payable to the plaintiff or order, one in two months and the other in four months from date, and signed "M. K. Olney, by Mary L. Olney, Atty.," and by the defendant. The cases were tried together in the Superior Court, before *Rockwell,* J. The jury returned a verdict for the defendant in each case; and the plaintiff alleged exceptions, which appear in the opinion.

*D. W. Bond,* for the plaintiff.

*W. G. Bassett,* for the defendant.

DEVENS, J. The defendant, Mrs. Olney, admitted signing the notes in suit; and contended that she did not do so intelligently, but was induced so to do by the design and fraud of the plaintiff. It was correctly ruled that, if there was a fraud on the part of the plaintiff, by which she was induced to sign the notes, the plaintiff could not take advantage of a signature thus obtained, but that it was for the defendant to satisfy the jury that there was such a fraud. There was no confidential relation between the parties which prevented their dealing with each other on the ordinary principles by which the conduct of different individuals should be guided. In the absence of fraud or

imposition, one who enters into a contract is conclusively presumed to understand the terms and legal effect of it, and to assent to them. *Rice* v. *Dwight Manuf. Co.* 2 Cush. 80. Mrs. Olney cannot therefore be allowed to say, as a defence to the action, that she signed the notes not thinking of such a thing as binding herself upon the notes, unless she was induced so to believe by the fraud of the plaintiff or his agent. The only question on this part of the case is whether there was any evidence which would authorize a verdict for the defendant. While the evidence on her part was contradicted in many particulars, in determining this question we assume that, in a conflict of evidence, it might all have been believed by the jury, to the exclusion of that by which it was sought to be controlled or controverted.

There had been a previous note given by Mr. Olney, the husband of the defendant, who died before the trial, for a debt to the plaintiff in the sum of $1500. This note had been discounted at the Hampshire County Bank, of which one Warner was cashier, it having been indorsed by the plaintiff. Just before it became due, Olney sent for Warner, who agreed to renew the note if the plaintiff would indorse it. At Warner's request, according to the defendant's testimony, the plaintiff came to see Olney, and agreed to take care of the note, saying that he would have it put into two notes, adding: "Don't worry about these at all. I will take care of them. All we want of you is to get well." Mrs. Olney further testified, that nothing was said to her about signing any note; that she had no property at the time, but had a policy of insurance, which would be available only at her husband's death. It further appeared, on behalf of the defendant, by the testimony of Miss Olney, who was the daughter, that she went to the bank to get a power of attorney to her for her father to sign; that she obtained this from the attorney of the bank; and that Warner gave her the two notes of $750, pointing out how they were to be signed, and saying, "Take them home to your father, and tell your father to sign there and your mother there." She knew that the two notes were to take up the $1500 note, as she stated, because she was so told by her mother. The conversation which took place at the time of signing the notes was admitted, against the objection of the plaintiff,

and was testified to by Mrs. and Miss Olney, substantially to the effect that the daughter repeated what Warner had said; that Mr. Olney said, "I do not see why your mother's name should be on there;" and that he sank back and said, "I guess it is all right." The power of attorney was signed by Mr. Olney, after which the daughter signed his name as it now appears on the notes. Mrs. Olney then signed the notes. Mrs. Olney further testified that she had never been spoken to about signing the notes; that she did not think of binding herself on the notes; that she signed them at once, after her daughter signed them; that the daughter went right back with the notes; and that her husband was very sick, and she thought the plaintiff was very kind not to worry her husband about the note.

Upon this testimony, we do not perceive that there is any evidence of fraud or deceit practised upon the defendant, by which she can avoid the promise made by her in signing these notes. While she says that she did not sign intelligently, but mechanically only, she could not have failed to understand what she was doing; and the very remark made by the husband shows that her attention was called to the responsibility she was assuming. No person was present representing the plaintiff; she had full opportunity to consider the act she was about to do; and she signed the very paper she intended to sign, and not one differing therefrom or substituted therefor. She knew that these two notes of $750 were to take up the $1500 note. Even if she had a right to believe, from her conversation with the plaintiff, that he would himself take up the $1500 note, when, the next day, she received the message from Warner, she was informed that, in order that the note should be taken up, she must herself sign the two notes which were to be used for that purpose. If this were a violation of the promise that the plaintiff had made, there was still no fraud or deception on his part, or on that of Warner, — if it be assumed that Warner acted as his agent, and that the plaintiff is thus responsible for his conduct, — by which she was betrayed into signing an instrument she did not intend to sign, or one which she did not understand. We are thus brought to the conclusion, that there was no sufficient evidence of fraud to warrant a verdict for the defendant; and that the court should have so ruled.

The plaintiff further objected to the admissibility in evidence of the conversation which took place at the time of signing the note. As the case may be again tried, it is proper to say that, so far as this forms a part of the act done by the defendant, as, for instance, in showing that she signed in consequence of the message brought to her from Warner, this evidence was properly admissible. But it would not be competent to use the declaration then made by Mr. Olney to contradict the evidence of the plaintiff that Mrs. Olney was to sign the notes. This declaration in no way qualified the act done by the wife in signing the notes. *Exceptions sustained.*